May it please the Court, my name is Robert Scarborough and I represent the Defendants Orkin and Rollins in this appeal. In 2005, Plaintiff Urbino agreed to arbitrate all employment-related disputes he had, with some exceptions that are irrelevant here, with Orkin and any of its affiliates. That agreement was governed, and is governed, by the Federal Arbitration Act, and that is significant in two respects. First, the Federal Arbitration Act demands that agreements to arbitrate be enforced according to their terms. And as the Supreme Court held in Stolt-Nielsen and in Concepcion, that includes the right to determine with whom one will arbitrate. That is, if someone declines to pursue arbitration on a representative basis or on a class basis, under controlling Supreme Court precedent, that should and must be respected. Is the arbitration issue in this case subsidiary to the jurisdictional one? What I'm asking is this, you thought, you think the District Court in this case should have compelled arbitration, but isn't the first question whether you should have been in the District Court at all? If Your Honor's questioning whether there is Federal jurisdiction here based on the amount of controversy, I think there is, because of the nature of the problem. I understand that's your contention in this case, but don't we, I'm asking a chicken-and-the-egg question. Don't we have to address that question and conclude that you are correct, before we conclude that the District Judge should have compelled arbitration? Absolutely, and I'm not suggesting otherwise. I actually have launched into the preemption issue, because I consider that the core issue in this case, particularly in light of the Ninth Circuit's en banc review of Kilgore, I think the jurisdictional issue is relatively straightforward, because of the nature of APAGA claim. The California Supreme Court, in both areas and in amalgamated trade union, has made it very clear that the nature of APAGA claim is, first and foremost, a claim belonging to and for the benefit of the State. It is the individual who is deputized to collect the remedy, if the civil remedy that belongs to the State, if the State declines to pursue it. In that sense, it is a unified claim. Let me ask, because that's the jurisdictional issue that interests me in this case. And you have to be claiming that this is a common and undivided claim, in the words of Snyder. Absolutely, Your Honor. One of my difficulties with that is that if the plaintiff prevails in the APAGA claim, and some sum is awarded, the plaintiff has to divide that sum with everybody else in the class as to 25 percent. It's not a class, but in the group. And then divide the sum, and then give 75 percent to the State. Isn't that an award that has to be divided hundreds of times? How can that be common and undivided? Fair question, Judge Hurwitz. I think I have two responses to that. First, the Ninth Circuit's decision in EGLE has addressed that issue in the context of a derivative action. This action is very much like a ---- Is it that the derivative actions, all the money goes to the corporation? Correct. And there might be a fee award to the plaintiffs and costs, but that single sum that's recovered as damages all goes to the corporation, does it not? It may, and it may go to the shareholders. What the Court determined in EGLE is that there was a unified, a common and undivided interest for the shareholder to pursue for the injuries to the assets of the corporation. However, the measurement of those damages was the sum of the individual losses that shareholders had accumulated as a result. The Court found no problem in saying there was nonetheless a unified interest, and that was the damage to the corporation. What happens to the award in the derivative case? Your Honor, I'm just not a securities expert. Neither am I, so we're on equal ground. I couldn't tell you, but let me focus on something I do know something about, which is the PAGA action. Remember, in a PAGA action, the award is the state's award. It is the state's money that it has elected to redistribute, 25 percent of which back to the aggrieved employees. But under amalgamated trade union and areas, the penalty first and foremost is solely the state's. And significantly, once a judgment is entered on that claim, no one else, not the state, not another aggrieved employee, can pursue the same action. In that sense, Your Honor, it's very much like people coming together with a unified interest in a plot of land. Once a decision is made on who owns the land, that's going to be binding on everybody's time and interest. Is it binding? If the PAGA plaintiff fails, and then some employee wants to bring a case against the employer for a violation of the labor code, as I understand it, there's no preclusive effect from the failed PAGA suit with respect to the second employee's claim. First and foremost, I am virtually certain in amalgamated trade union or areas, the California Supreme Court has directly addressed that. You can't bring the second PAGA case, but you could certainly bring, the employee could certainly bring a case against the employer for his own wages. Absolutely. Even though that was, in effect, the subject of the PAGA suit. Absolutely, but that is the key distinction that is important to jurisdiction here. The claim that the employees always retain the right to bring their underlying labor code violation claims, the PAGA action does nothing to that. It does not affect the right of any individual plaintiff. First, the PAGA claim is only about this civil penalty that, but for PAGA, would belong entirely to the state and could be pursued only by the state. But as a result of PAGA and the decision of the California legislature, the state has deputized a single employee to bring that, and the recovery goes back to the state with 25% of that coming back to the employees. If I could rephrase your argument, would it be that this is under state law, the individual plaintiff in this case is pursuing a common and unified claim on behalf of the class? Absolutely. And I use class loosely. And I think that is clearly what the court in amalgamated trade union is saying. Should we ask the California Supreme Court whether you're right? There's really no reason to. I used to hate that when I was a kid. Two reasons. First, I think it's already decided the issue in amalgamated trade union in terms of there being a unified interest, that this is the claim of the state. And secondly, because this is a matter of federal jurisdiction, first and foremost, this is an issue for this court to decide. And there's really nothing further for the California Supreme Court to say on this. It's a peculiar situation. Snyder tells us that in figuring out whether claims are common and unified, we ought to refer to well-established principles of state law. And we have this bizarre state claim where they deputize people to go out and sue on behalf of the state. There's no question it's unique. I have no idea what the common principles of state law here are that we ought to make reference to. So why don't we ask the state judges what they think? Because they've already told us. I really do think that the Supreme Court in both amalgamated trade union and Arias is quite clear that this claim is a claim that first and foremost originates with the state. It is the state's claim.  And PAGA allows an individual to be deputized to pursue that claim. And I think this is where EGLE. I'm sorry. No, I just wondered if I could finish. Yeah, please. That is where EGLE comes in and instructs us that the fact that the penalty may ultimately be distributed to multiple people or based on the, you know, separate violations of the underlying labor code violations in this case is secondary to the jurisdictional issue of whether this was a unified claim to begin with. And keep in mind, in Snyder v. Harris, fundamentally all the court is looking for is an answer to the basic question of has there been an improper attempt to take what are truly separate claims here and aggregate them in a single action. There's only one claim here, the claim of the state for a civil penalty. And that is all that is being pursued here. Let me just ask one more question on this topic. And as you can tell, it interests me. Absolutely. If the state had brought the PAGA action, I mean the ULC action, you would agree that wouldn't be removable. Correct. Because the state wouldn't be a diverse citizenship. Correct. Given your characterization of these actions, should we treat the plaintiff as the state's agent and therefore the real party in interest is the state and the case should not be removable? Again, a fair question. I think in this case, the question is whether the state is a party. And the state is not a party to this action. So you like the state for purposes of aggregation but not for this purpose? Again, a fair point. But I think there is a principled distinction. And again, I'm basing this on what the Supreme Court of California has said in Amalgamated Trade Union, that the state, because it is not a party to this action, can't be factored into the equation of determining whether this case is removable. I don't know that technically you would say that the individual is the agent because it is not taking instruction in that sense from the state. So I don't think in that sense the individual is a true agent. I think it is really just a convenient way of describing the fact that someone has been deputized to go pursue an action that the state would pursue otherwise and receive a bounty for doing it. I have a question on preemption. Could Boeing, as a prerequisite to employment, require an employee to arbitrate a QTAM claim? I'm just not familiar enough, Your Honor, with QTAM actions to be able to answer that. An employee who thinks that a government contractor has defrauded the government to bring suit on behalf of the government as a private attorney general and recover damages, and there have been some very significant damage awards. I'm just wondering whether Concepcion would cover that. The QTAM actions, Your Honor, I'm familiar with are federal actions, and Concepcion really does not address the action, address the decision of. . . So you're uncertain about whether preemption would extend to a federally authorized private attorney general, if you will, but you're quite comfortable with it, preempting a state policy allowing a private attorney general. Absolutely. And that is the rule in Concepcion. The Supreme Court has drawn a very clear distinction, and will do so again this term in the American Express case, between interactions between two co-equal federal statutes, in which case the supremacy clause of the Constitution is not implicated, and the conflict between two statutes in a federal system, between a federal and state statute. And in that instance, the state statute must yield. And if there was any doubt that Concepcion, as some people have argued, is limited to its facts, I think the Supreme Court's firm per curiam reversal in the Marmot decision about a year ago, reversing the West Virginia Supreme Court, removes any doubt that Concepcion is a decision about class actions. Concepcion, first and foremost, is an articulation, and a firm and unequivocal articulation from the Supreme Court, that state statutes that create an obstacle to arbitration must yield. And PAGA could not be any better of an example of that, because the PAGA statute can be enforced with respect to claims under the arbitration agreements under the Federal Arbitration Act only by striking the arbitration clause. And remember, the issue in this case is relatively narrow. We are talking about arbitration clauses governed by the Federal Arbitration Act. We are not talking about employees' rights to bring PAGA actions if they're not subject to arbitration, and we're not talking about employees' rights to bring PAGA actions if they are subject to a California-governed arbitration agreement. This is simply a question of arbitration agreements governed by the Federal Arbitration Act. Could you address, as I understand the Arbitration Act, what the Supreme Court has said is a state blanket rule of unconscionability with respect to certain claims can't stand. Is there any sustainable claim in this case of either substantive unconscionability or procedural unconscionability with respect to the particular arbitration clause in Mr. Rubino's agreement? Let me answer that in two steps. First, I think the premise may be just perhaps incomplete. It is not simply a conception that a state statute that directly attacks is subject to preemption. It is any state rule that, quote, stands as an option. Fair enough, but let's assume that California has an overarching rule of unconscionability which says if somebody signs the contract with a gun at his head or the provision is buried somewhere in the fine print, that might be a reason not to enforce it. I'm trying to find out whether those arguments exist in this case. The district court didn't address that. They did not. We would like this court to address them. I think the arbitration agreement is fair and enforceable. I think the court will be hard-pressed to find any cases in California or decided under California unconscionability law where a similar arbitration agreement such as the Orkin agreement has been found to be unconscionable. And let me explain it. Should we send that back to the group? I guess my primary question is since the district court never addressed those arguments, why should we address them in the first instance? If we conclude there's jurisdiction and we conclude the district court was wrong by applying the blanket rule, should we say now go back and figure out the rest of this case? We shouldn't do it in the first instance. There's no question this court has the authority to do this, and we would argue the court should do it because it is purely a legal unconscionability, especially under the facts here. There are no factual issues that need to be resolved. So the only issues to resolve are legal issues. And so it would just save us a second trip back up here for this court to decide any of the legal issues. Let me just quickly, and then I would like to reserve a minute or two, answer your question about why this agreement is enforceable. Plaintiffs take some pot shots at this agreement, but let me put the agreement in context. First, the agreement preserves all individual rights and remedies of the aggrieved employee. To be sure, he cannot pursue the PAGA action, but the Supreme Court of California has already said the PAGA action is not a substantive right. It is a procedural right. All remedies, all remedies under the Labor Code for damages, for statutory penalties are still available to the plaintiff. The plaintiff is entitled to take discovery, in fact, up to six months of discovery. The decisions at the hearing will be governed by the rules of evidence. The hearing is to take place where the employee worked. The hearing must be recorded and therefore transcribed at the request of any party. It must be conducted by a lawyer or a judge. And significantly, the agreement could not be any clearer that that arbitrator is bound by the law. The consumer has all rights and remedies, and the arbitrator has to apply those just like a court. If I could, I've got about a minute and a half left. I would like to reserve that.  Thank you, counsel. Boutrous. Thank you. Good morning, Your Honor. Good morning, Your Honors. Kenneth Yun for Plaintiff, Mr. Urbino. There's two issues before this Court. The first threshold issue, I believe, and Mr. Urbino believes, is the issue of whether or not the district court, the federal courts, have subject matter jurisdiction in this case. I think the overarching policy and the policy issues weren't well addressed by Mr. Urbino in the papers. I'd like to go over them both for the arbitration as well as for this issue. But the policy issue is that the federal courts are courts of limited jurisdiction. With respect to the particular issue here, the anti-aggregation rule, I think that the key point to look at is that the way to look at these has been identified as whether or not the plaintiffs are seeking a single indivisible res. I think that's the best way to look at this, but that's addressed in our papers. The policy I'd like to look at is how will the district courts, I'm sorry, how will the trial courts address how a PAGA action is actually litigated can help look at how the courts should look at this particular issue of the anti-aggregation. Under PAGA, the claim will be litigated on a per-person basis. If one employee- Well, isn't the question what the judgment is? What the claims are first is an indivisible claim, and then at the end of the day, what's the judgment? Well, in this case- That puts the procedure ahead of the substance, and I think that the substance of this- Well, let me ask you this. In a PAGA action, the judgment goes to whom? The judgment goes 75 percent to the State and 25 percent to each of the employees in the proportion of the violation. What does the judgment read? Mr. Urbino gets judgment in the amount of X, correct? Excuse me? The judgment. Mr. Urbino wins. The trial court is writing out the formal judgment. It says Mr. Urbino receives judgment in the amount of X, plus attorney's fees and costs. Right. So why isn't that an indivisible claim? If the judgment is in your client's name alone, and then subject to later distribution, why isn't that an indivisible claim? Well, actually, when I said that, Your Honor, I think that what I understood that to be is that Mr. Urbino, if he prevails for himself and only himself, it will be just himself on that. Let's assume he proves hundreds and thousands of labor code violations in the case. And at the end of the case, the judge enters a judgment. How does it read differently than the judgment I just made up? Well, I think there haven't been very many PAGA cases that are taken to judgment, Your Honors. That's one thing that is a little bit difficult. It's a fairly relatively new statute. It hasn't been tried very much. But if you look at the statute itself, the statute itself is written so that the aggrieved employees seek for themselves and Mr. Urbino and other aggrieved employees seek for themselves these penalties. And the statute, we believe, is written in a way for the individual employees to get their amounts for a good reason. The state did not deputize Mr. Urbino to receive 25 percent of the state's recovery. If there were 100,000 violations for 1,000 different people, Mr. Urbino doesn't receive 25 percent of everybody's amount. There's an obvious, clear reason why the state didn't deputize Mr. Urbino in that kind of a way. He's not incentivized that way. He's incentivized to do what he wants for the benefit of everybody. For his own benefit, it is very limited. He can only benefit to the extent he has violations. No, I understand that. But at the end of the day, the judgment doesn't have 100,000 people listed in the judgment. They don't have a right to collect on the judgment. Only your client has the right to collect on the judgment, right? I can't really say what would happen with the court at that time. If the child court decides to give some sort of- Yeah, but just let's focus on this because it's important. At the end of the day, you win. People are carrying you off on chairs and screaming and yelling. And the district judge says, okay, what do you want the judgment to say, Mr. Urbino? What do you say? Well- It doesn't identify all the other members of the class and say each of them get 25% of this award, does it? Because we don't know who they are. Well, actually, I believe we would know who they are. In order to- So you think at the end of the day, the judgment would say A through Z times 12 or 25 get this amount and the state gets this amount? Or does it just say Mr. Urbino is awarded this amount subject to whatever California law tells him what to do with it? You won. So I'm the district judge. You've won. Tell me what you want, Mr. Chair. What does the judgment say? I think it's up to the trial court judge, but- I know, but tell the judge. I'm the judge. Tell me what you want. The way we would approve this case would be on a per-person basis. I know you approved the case because you've got to approve the damages, but I think both Judge Hurwitz and I are kind of getting to the same question, which implicates whether or not there's jurisdiction. That is, at the end of the day, how can a judgment be listed in the name of a non-party? The client's the only party to this case. Yes, that's correct. How can the judgment be entered in favor of a non-party? Well, the judgment can instruct the company to pay money to individual people. Under this act, is there a second wave contemplated? In other words, your client proves the violation to the satisfaction of the court. Is there then a second phase where people who are identified that would be subject to an award of some kind? Or what happens? I think that's one of the issues I'd like to discuss, is that the way the case would be tried in a trial court isn't that there's one violation and then there's an apportionment amongst people. The violation would happen on a per-person, per-incident basis. Similar to how a labor commissioner would audit the company for these same penalties. The auditor would come in, look at the papers, interview the people, make a determination. The company could challenge that. And it would be on a per-person basis. We have found that you have this many violations, this many the first time, this many for the second and subsequent, for this many certain specific people. And sometimes they might say you have 10 employees. We don't find violations for every employee. Some employees might have their meal breaks provided to them. Other employees may not. All right. Well, let's say for the sake of argument, you prove this case and there's an employee who says, look, I want no part of this suit. Please do not use my alleged violation as part of your suit. I don't want any money. What do you do? Well, what do you do? It doesn't matter, does it? You can still collect on behalf of the employee, even if the employee objects, correct? It's theoretically possible that the state or the private attorney, Mr. Rubino in this case, could collect, but the chance of prevailing when the employee is not cooperating, perhaps even takes this, if the company puts that employee on the stand or puts a declaration in front of the court that this employee has no interest in this, the odds of actually succeeding are somewhat limited. But, yes, just like the state, the state can go after a company, even if the witnesses are not fully cooperating. Should we certify the question to the California Supreme Court about whether or not you're pursuing a common and undivided claim? I think that the court here has enough to say that this is a separate individual claim that does not allow for jurisdiction. If the court is significantly concerned about that issue, obviously the California Supreme Court is in the best position to determine California law. But by remanding this case, California courts would be determining how these cases are handled within the state courts of California, which is what we believe the legislature drafted the action, the PAGA Act, in order to have the claims in state courts. If the Attorney General or the Labor Department had brought this claim against Orkin, put aside whether or not it could be removed, you would agree there would be more than $75,000 in controversy, don't you? If the state did not have any, yes, the state would keep all the money. Yes, so there would be more. So why shouldn't we treat the 75% that goes to the state at the end of this day as the appropriate amount in controversy? I think there is one of the cases mentioned in the paper is discussed that the issue is if one party needs another party to bring the action, then they should be combined. If they don't, they don't need to be combined. I think that was addressed in a different case that said, since the state doesn't need Mr. Urbino, Mr. Urbino doesn't need the state, combining those numbers would be incorrect. Isn't that 75% a common and undivided race, which is to say it all goes, there's only one party in interest that has any claim to that race, and it's the state, and it doesn't divide it up when it gets it. It just keeps it. Well, again, I think that what the question is asking is if the state did something by itself, how would that be? And then trying to bring that into the statute, but the statute isn't, Mr. Urbino doesn't work for the state as a result of the statute. Mr. Urbino is seeking the claims under the statute, which are specifically portioned out as separate proofs for each individual employee, each agreed employee. I'm still, and maybe nobody can answer this because none of these cases have ever been tried to judgment, but tell me what happens to the judgment. Mechanically, what happens to the judgment? You have this large sum that's awarded to Mr. Urbino or to some other POCA plaintiff because he or she has proved all these violations, and there's a whole bunch of penalties. And so the court says, yeah, I think the amount that you owe Orkin is a million dollars. What happens to that million dollars at the end of the day? I think that if a case had gone to judgment, then the amounts would be per person because the statute does not, the legislature does not intend for Mr. Urbino to hold, if in the case of a million-dollar settlement or a million-dollar judgment, $250,000. Just mechanically what happens to it? Are you saying the court would enter separate judgments for each member, each employee in some amount, which is 25 percent of the penalty, and then enter a judgment in favor of the state for the other 75 percent? Or does Mr. Urbino have statutory duties to distribute? I don't think he'd have the statutory. I think the statutory duty would be that he wouldn't be allowed to really touch the money before it goes to the aggrieved employees other than himself. And so even though they're not parties to the suit, there would be a judgment in their favor? Well, the judgment, this is a penalty statute in some respects. This is a, you could look at it as that Mr. Urbino is providing a mechanism for other people to receive a benefit, not just himself. And the statute doesn't allow for Mr. Urbino to be the administrator of this. The money should go directly to those people, and they can choose what they would like to do with that. To enforce the judgment, it's really, we haven't seen a judgment per se. So it's really hard to say what it would ultimately look like. I take it these cases have been settled and the employer has agreed to pay something to affected employees and pay a penalty to the state? I'm fairly sure there's no appellate decision that goes into reviewing exactly how any of these cases have been. We've taken a lot of your time to talk about the jurisdictional claims, so if you want to switch over to the arbitration one. That would be the time to do it. Yes, Your Honor. With respect to the arbitration agreement, we believe the district court was correct that the agreement is unconscionable. And there are four things I'd like to discuss on this topic, which is that first procedural unconscionability, substantive unconscionability, the policy behind the substantive unconscionability, and that this is a very unique agreement, very different from many of the other agreements that are before different courts. We didn't address this as detailed as I'd like to here, but for procedural unconscionability, there's only two elements in California that are necessary, and that's unequal bargaining power and the contract of adhesion. We have that here, and that's generally applicable to all agreements. Why is this a contract of adhesion? It's take it or leave it. Mr. Urbino needs to sign it. No, but it's not. I assume Mr. Urbino has the opportunity to work for other pest control people if he wants to. I mean, it's not like it's bread or water. He doesn't have to. He doesn't like the terms of employment at Orkin. He can go work someplace else. That presumably is true, but the issue is the unequal bargaining power. Well, that's a separate issue. I mean, a contract of adhesion, we generally say, is a contract that one of the parties has to enter into because he really has no choice. And here, I take it Mr. Urbino has a choice. There may be other employers who pay less but don't require arbitration. Well, a significant percentage of employers do require arbitration, and that this particular clause, just like other clauses may be take it or leave it clauses, this is also take it or leave it clause. The savings of this would be that if the arbitration was substantively conscionable, then it would be overall. So tell me why it's substantively unconscionable. He doesn't give up his remedy, I take it. He has a suit against Orkin for his meal breaks and whatever else he thinks he was denied. So what personal remedy does he give up? Well, the companies argue that PAGA is only a procedural right, it's not a substantive right. What I would look at that is that PAGA provides a right to money, and this arbitration agreement is drafted somewhat unusually in that it says all disputes shall be, well, it defines disputes, but it essentially includes almost all disputes, shall be covered, certainly for Mr. Bobino, shall be covered by this agreement, but the arbitrator shall lack the power to resolve certain disputes, including disputes specifically under the Private Attorney General Act. So whereas other statutes might limit the scope of his available, the scope of him seeking PAGA remedies, this one bars the arbitrator from having the power to even arbitrate anything with respect to the Private Attorney General Act. That's a significant difference. Arguably, it would support the district court's opinion and decision if it was found that, based on that language, the arbitration agreement did not cover the Private Attorney General Act. Do you agree that the district court never addressed this issue? Because it thought it was a public policy against arbitration here. Well, I think the district court didn't address all the other issues of substantive unconscionability that we've raised because it found a significant substantive unconscionable that didn't go through all the other ones. Do you think we ought to address them in the first instance, as your opponent thinks, or should we send them back to the district court if we get that far down in the case? I'll defer to the court. Of course you will. I'm asking you. I hope you will. I guess I'm asking what your position is. My position would be that I think that this court should look at these issues. So you agree with your opponent on that one? Not how we should dispose of them, but you think we ought to look at them in the first instance? Yes. Now is the time to look at these issues. You agree they're legal issues and they can be resolved here? Yes. This is, I think, I don't think the parties dispute, or I don't think the parties have an issue with respect to the standard of review for either of the motions, of either of the appeals. But the policy issue I have with these substantively unconscionable provisions, which is that, first, it's not mutual. The company has excluded from disputes pretty much everything that the company would want to sue an employee for, specifically solicitation of their other former coworkers, unfair competition, trade secret violations. Number two, I think that there is a free look, which is in another case found to be substantively unconscionable, and in this case without an attorney. There's a 90-day private statute of limitations. And the cost of arbitration includes two different issues of substantive unconscionability. The first, which this Court has found to be substantively unconscionable in other cases, specifically the Circuit City cases, is that the company requires Mr. Urbino to pay the company $120 to seek arbitration. The company doesn't pay Mr. Urbino $120 under any circumstance. And the payment goes to the employer, presumably as a discount on the cost of the case. If that were – are those separable provisions? In other words, if we thought that the arbitration provision itself was substantively fair, a neutral arbitrator who looked at the claims, wouldn't we just find the $120 provision unenforceable? The way to look at that, and I think the way the district court looked at it as well, without going through each individual one, is that if the purpose of the arbitration agreement isn't simply to change venue, but more to be used as a tool to deprive one party of rights, then the agreement should be strict. It should be not enforced as against public policy. California public policy is unconscionable. And if you look at each one of these four – well, five unconscionable terms I just mentioned, the defendants carefully drafted this. The agreement is well drafted, very carefully drafted, so that in this court the defendant can say, this is a misunderstanding, the plaintiff is not looking at these clauses correctly. Whereas in arbitration, I expect that if a plaintiff or an employee went directly to arbitration looking at the agreement, thinking that it's a fair agreement, he would find the defendant saying, or the company saying, you've missed your 90-day statute. You didn't pay me my $120. You need to pay for half the cost of this arbitration because this Unfair Business Practice Act claim, or this common law wrongful termination claim, are not statutory civil rights claims, and they're not civil rights business practice claims, they're not civil practice statutory civil rights claims specifically either. The company could use each of these defenses to get substantive advantage in arbitration because of the way they're written, and the arbitrator could find it in the employer's favor. The totality of the way this is drafted suggests to the district court, and I think should be to this court, that the court should not sever because the intent of this agreement is not to establish simply a different venue to resolve disputes, but to establish an advantage to the employer. You do agree, I take it, with your opponent that we don't get to the arbitration issue if we find absence of subject matter jurisdiction? That's correct, Your Honor. That that will be an issue for the state court? Yes, that's correct, Your Honor. The threshold issue, obviously, the court would lack the power if it didn't have subject matter jurisdiction.  Okay. Thank you. Your time has expired. Thank you, Your Honor. In the minute 14 remaining, I'd like to just go straight to the points of substantive unconscionability and demonstrate, I think, fairly quickly why there is no substantive unconscionability. The first argument he raised was mutuality of obligation. There is no question under the expressed terms of the agreement both Orkin and the plaintiff are subject to the agreement. You'll find that in the arbitration clause in the record at 57, and you'll find that in the dispute resolution procedures, which are incorporated by reference in Section 1, and that's record page 33. There are, in fact, carve-outs. Both sides have reserved for themselves certain claims that do not need to be arbitrated. For example, the plaintiff does not have to arbitrate workers' compensation claims and LRB claims, and I believe there's one other type of claim that Oh, and ERISA claims. The test in California is not whether the court should decide whether or not there was enough for each side. It's whether or not there is a modicum. That is the Armendariz test, a modicum of mutuality. Sure, there's no question there's a modicum of mutuality. Orkin is bound by the agreement. Doesn't the agreement deprive – I mean, in the real world, Mr. Urbino's PAGA claim, his individual PAGA claim at least, is worth something. And doesn't the agreement basically say you can't pursue that claim? That is correct, but that is not a right of Mr. Urbino. Under the Amalgamated Trade Union case, the California Supreme Court specifically held that the PAGA claim is not a right of an individual. It is a procedural vehicle to get the state some money. So all the substantive rights Mr. Urbino has under the Labor Code, under California common law, under the terms of his employment agreement, all of those are scrupulously maintained in this arbitration agreement. I see I'm out of time, and so if there are no further questions. Thank you very much. The case as heard will be submitted for decision.
judges: Hawkins, Thomas, Hurwitz